UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x

DORA REGINA CHILSON,

       Plaintiff,
                **MEMORANDUM & ORDER**
    v.               (16-cv-804)

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

       Defendant.

----------------------------------------------------------------x
PAMELA K. CHEN, United States District Judge:

    Plaintiff Dora Regina Chilson ("Plaintiff") brings this action under 42 U.S.C. § 405(g), seeking judicial review of a determination by the Social Security Administration ("SSA") finding that Plaintiff was not disabled, and therefore is not entitled to disability insurance benefits, for the time period of July 30, 2009 through September 27, 2013. Plaintiff moved for judgment on the pleadings, asking this Court to remand to the SSA for redetermination (Dkt. 9), and the SSA filed a cross-motion for judgment on the pleadings, asking this Court to affirm the SSA's determination (Dkt. 13). For the reasons stated below, the Court GRANTS Plaintiff's motion for judgment on the pleadings and DENIES the Commissioner's motion. The case is remanded for further proceedings consistent with this opinion.

## BACKGROUND

    Plaintiff applied for disability insurance benefits ("DIB") on May 16, 2011, alleging disability beginning July 30, 2009, due to dysthymic disorder, anxiety disorder, hypertension, mitral valve disorder, gastroesophageal reflux disease ("GERD"), and carpal tunnel syndrome

("CTS"). (Tr. 302-03, 325.)[1] Her claim was initially denied (Tr. 158, 160–65), and she subsequently requested a hearing before an administrative law judge ("ALJ"). (Tr. 172–73.) The hearing was held on May 26, 2013 (Tr. 97–144) before ALJ Romeo, and a favorable decision was issued on September 27, 2013. (Tr. 147–56.) The decision, finding that Plaintiff met the criteria for psychiatric listings 12.04 and 12.06, was based in part on reports from Edward Sodaro, Jr., M.D., Plaintiff's treating psychiatrist. (Tr. 152–55.) Plaintiff was represented by Attorney Raymond Lavallee in connection with her DIB application and the hearing before ALJ Romeo. (Tr. 179.)

On February 25, 2014, the SSA was notified by letter from the New York County District Attorney's Office ("DA") that a fraud investigation by the DA concerning attorney Lavallee and others revealed that a group of DIB recipients may have obtained benefits under fraudulent pretenses. (Tr. 229–30.) The letter stated that the DA's investigation had revealed that Lavallee had assisted DIB applicants with paperwork that included false statements regarding their activities of daily living and that Lavallee had coached applicants about how to behave during consultative examinations, ALJ hearings, and treatment sessions with pre-designated doctors. (Tr. 229.) The letter further stated that an identified "group of [DIB] recipients"—including Plaintiff (Tr. 230; Dkt. 18-1 (Egan Decl.) ¶ 6))—were represented by Lavallee in their DIB proceedings and "fit other patterns characteristic of Mr. Lavallee and his co-conspirators' fraudulent scheme, including boilerplate benefit claims applications, identical alleged psychiatric disabilities and symptoms, the use of the same doctors, and common 'treatment' patterns." (Tr. 229.) The letter also enclosed a copy of an indictment of Lavalle and others, which further detailed their alleged fraudulent scheme. (Tr. 232-48.) The indictment alleged that applicants represented by Lavallee often sought benefits

---

[1] Citations to "Tr." refer to pages in the certified administrative record. (Dkt. 7.)

based on alleged post-traumatic stress disorder ("PTSD"), were coached on how to give the impression that they were symptomatic, and used the same stock phrases, such as "I nap on and off during the day," and "I usually have the TV on to keep me company," in their written applications. (Tr. 233–34.)

Following the SSA's receipt of the DA's letter, the SSA notified Plaintiff that, because of the investigation by the DA's office, which had resulted in the indictment of her former attorney and others, Plaintiff's DIB case would be redetermined. (Tr. 253.) The SSA notified Plaintiff that certain evidence from sources who were indicted or discredited for giving SSA fraudulent information could not be considered in the redetermination, including any evidence that the SSA had reason to believe was tainted by fraud. (Tr. 253.) Specifically, the SSA notified Plaintiff that, in the redetermination, the SSA would disregard (1) evidence from medical providers who were implicated in the fraud scheme; (2) "[a]ny of [Plaintiffs'] allegations regarding a mental impairment diagnosed by a discredited doctor; and (3) "[m]edical evidence from other sources that is based in whole or in part on your allegations of a mental impairment alleged in your original application for disability benefits." (Tr. 253–54.) The SSA invited Plaintiff to submit "new evidence that shows you were disabled prior to September 27, 2013," but reiterated that the SSA "will only consider untainted evidence of impairments that you had prior to that date." (Tr. 254.)[2]

After receiving the notice of redetermination, Plaintiff requested a hearing; ALJ Terence Farrell was assigned to conduct Plaintiff's redetermination hearing. (Tr. 365.) Before the hearing, the SSA sent Plaintiff a letter reminding her that evidence would be excluded from the record based

---

[2] The SSA later sent a follow-up letter to Plaintiff, reminding her of the deadline by which to submit new evidence or arguments regarding her case. (Tr. 252.)

3

on the SSA's investigation into the fraud scheme perpetrated by attorney Levalle and others, and inviting Plaintiff to submit any new evidence in advance of the redetermination hearing. (Tr. 380.)

The redetermination hearing was held before ALJ Farrell on June 17, 2015. (Tr. 46–96.) Plaintiff and her current attorney attended the hearing, as did a vocational expert ("VE") and medical expert ("ME"). (Tr. 46, 53–62, 85–94.) Plaintiff gave testimony during the hearing, and Plaintiff's attorney questioned the VE and the ME. (Tr. 46, 53–62, 85–94.) On July 17, 2015, ALJ Farrell issued an unfavorable decision, finding that Plaintiff was not disabled within the meaning of the Act from July 30, 2009 through September 27, 2013. (Tr. 9–32.) Plaintiff requested appellate review by the SSA Appeals Council (Tr. 41), which was denied (Tr. 1–5). Plaintiff filed this action, seeking review of the ALJ's determination of ineligibility.

## DISCUSSION

### I. LEGAL STANDARDS

#### A. Standard of Review

In reviewing a denial of DIB to claimants under the Social Security Act (the "Act"), federal district courts must determine "whether the SSA's decision was supported by substantial evidence and based on a proper legal standard." *Clark v. Comm'r of Soc. Sec.*, 143 F.3d 115, 118 (2d Cir. 1998). The term "substantial" does not require that the evidence be overwhelming, but rather that the evidence must be "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). In determining whether the Commissioner's findings were based on substantial evidence, "the reviewing court is required to examine the entire record, including contradictory evidence and evidence from which contradictory inferences can be drawn." *Selian v. Astrue*, 708 F.3d 409, 417

(2d Cir. 2013) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1038 (2d Cir. 1983) (per curiam)). A district court's role in reviewing the Commissioner's final decision is limited, because "it is up to the agency, and not this court, to weigh the conflicting evidence in the record." *Clark*, 143 F.3d at 118. Thus, as long as "the [ALJ] applied the correct legal standard" and "the ALJ's findings are supported by evidence that a reasonable mind would accept as adequate, the ALJ's decision is binding on the court." *Petre v. Comm'r of Soc. Sec.*, No. 13-CV-2657, 2015 WL 6971212, at *3 (E.D.N.Y. Nov. 20, 2015).

### B. Eligibility Standard for Social Security Disability Benefits

In order to be found eligible for DIB benefits, claimants must be disabled as defined by the Act. Claimants are disabled under the meaning of the Act when they are unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The claimant must prove that the impairment is "of such severity that [the claimant] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). However, the ALJ has an affirmative obligation to develop the administrative record. *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d 503, 508–09 (2d Cir. 2009). This means that the ALJ must seek additional evidence or clarification when the claimant's medical reports contain conflicts or ambiguities, if the reports do not contain all necessary information, or if the reports lack medically acceptable clinic and laboratory diagnostic techniques. 20 C.F.R. § 404.1512(b)(1).

In evaluating disability claims, the ALJ must adhere to a five-step inquiry. The claimant bears the burden of proof in the first four steps in the inquiry; the Commissioner bears the burden in the final

step. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). First, the ALJ determines whether the claimant is currently engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If the answer is yes, the claimant is not disabled. If the claimant is not engaged in "substantial gainful activity," the ALJ proceeds to the second step to determine whether the claimant suffers from a "severe impairment." 20 C.F.R. § 404.1520(a)(4)(ii). An impairment is determined to be severe when it "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(a)(c). If the impairment is not severe, then the claimant is not disabled within the meaning of the Act. However, if the impairment is severe, the ALJ proceeds to the third step, which considers whether the impairment meets or equals one of the impairments listed in the Act's regulations (the "Listings"). 20 CFR § 404.1520(a)(4)(iii); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1.

If the ALJ determines at step three that the claimant has one of the listed impairments, then the ALJ will find that the claimant is disabled under the Act. On the other hand, if the claimant does not have a listed impairment, the ALJ must determine the claimant's "residual functional capacity" ("RFC") before continuing with steps four and five. The claimant's RFC is an assessment which considers the claimant's "impairment(s), and any related symptoms . . . [which] may cause physical and mental limitations that affect what [the claimant] can do in the work setting." 20 C.F.R. § 404.1545(a)(1). The ALJ will then use the RFC determination in step four to determine if the claimant can perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If the answer is yes, the claimant is not disabled. Otherwise the ALJ will proceed to step five where the Commissioner then must determine whether the claimant, given the claimant's RFC, age, education, and work experience, has the capacity to perform other substantial gainful work in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the answer is yes, the claimant is not disabled. However, if not, the claimant is disabled and is entitled to benefits. *Id.*

## II. THE ALJ's DECISION

As noted above, by order dated July 17, 2015, ALJ Farrell determined that Plaintiff was not disabled within the meaning of the Act from July 30, 2009 through September 27, 2013.

### A. The ALJ's Exclusion of Evidence

Plaintiff's appeal to this Court is based largely on the ALJ's decision to exclude certain categories of information as evidence in the redetermination hearing, including medical records related to Plaintiff's mental health during the period of alleged disability. (Pl.'s Br. 1–9; Def.'s Br. 20–27.) A careful examination of the ALJ's exclusion of evidence is therefore warranted.

The ALJ excluded the following evidence:

(1) all treatment records from Dr. Edward Sodaro, Plaintiff's treating psychiatrist for the period of December 17, 2009 through at least March 8, 2011;

(2) all treatment records from Christine Zarrilli, L.C.S.W., who saw Plaintiff for individual therapy sessions from May 10, 2011 through March 2012;

(3) treatment notes from a medical clinic related to Plaintiff's complaints of anxiety and panic attacks on March 13, 2012;

(4) all treatment notes from Alicia M. Hurtado, M.D., who saw Plaintiff for anxiety and other mental conditions beginning in May 22, 2012;

(5) a psychiatric evaluation performed by Michael Alexander, Ph.D, in August 2011;

(6) a psychiatric evaluation performed by Christopher Flach, Ph.D, in March 2013;

(7) a function report, signed by Plaintiff on June 8, 2011 (Tr. 366–76), documenting Plaintiff's alleged panic attacks and reduced mental functioning at that time[3];

With these exclusions, the record contained the following evidence:

(1) medical records related to Plaintiff's receipt of treatment for chest pressure and pain on December 2, 2010 (Tr. 670–711);

---

[3] In the redetermination hearing, Plaintiff testified that someone else had filled out this form after asking her questions, and that Plaintiff "probably didn't read the form before signing it." (Tr. 74–75.)

7

(2) a "mental impairment questionnaire" form, dated March 23, 2015, prepared on Plaintiff's behalf by Dr. Alicia Hurtado;

(3) a letter from Dr. Hurtado, dated June 12, 2015, in which Dr. Hurtado opined on Plaintiff's mental functioning;

(4) testimony from Plaintiff at the redetermination hearing;

(5) testimony from medical expert Kenneth L. Cloninger, a board certified neurosurgeon, concerning Plaintiff's claimed physical impairments (but not her mental impairments);

(6) testimony from VE Dawn Blythe concerning jobs that could be performed by a hypothetical person with the limitations described by the ALJ in the hearing.

Notably, as a result of the exclusions, the ALJ did not consider any medical evidence concerning Plaintiff's mental health that was created from December 17, 2009 through September 27, 2013, the time period for which DIB were being considered. The ALJ also instructed the medical expert who attended the hearing, Dr. Cloninger, that he was prohibited from opining on Plaintiff's mental health and must limit his testimony to Plaintiff's physical impairments.

By way of explanation, the ALJ stated in the hearing that he was obligated, under Sections 205(u) and 1631(e)(7) of the Act, to disregard all evidence for which "there is reason to believe fraud or similar fault was involved." (Tr. 12.) According to the ALJ, Sections 205(u) and 1631(e)(7) of the Act required him to exclude evidence falling into any of the following categories: (1) evidence from medical providers who were implicated in the fraud scheme; (2) "[a]ny of [Plaintiff's] allegations regarding a mental impairment diagnosed by a discredited doctor; and (3) "[m]edical evidence [from other sources] based in whole or in part on [Plaintiff's] subjective complaints of a mental impairment alleged in [Plaintiff's] application for disability benefits." (Tr. 12–13.)

8

## B. The ALJ's Disability Analysis

In reaching his determination that Plaintiff was not disabled, the ALJ applied the five-step sequential evaluation process set forth in 20 C.F.R. § 404.1520(a). (Tr. 13–25.) Plaintiff contends that the ALJ's five-step evaluation was flawed at the second and fourth steps. Accordingly, the Court summarizes only those steps here.

In step two of the evaluation, the ALJ considered whether Plaintiff had a medically determinable impairment that was "severe," or a combination of impairments that were "severe" within the meaning of applicable SSA regulations. (Tr. 14.) Based on the limited medical evidence that the ALJ believed he was permitted to consider (as summarized above), the ALJ concluded that Plaintiff did not suffer from any "severe" impairment, but that she did suffer from non-severe mental impairment in "social functioning" and "concentration, persistence or pace." (Tr. 18–19.)

Before proceeding to step four of the evaluation, the ALJ determined Plaintiff's RFC. (Tr. 20–23.) Based on the limited medical evidence that he believed he was permitted to consider (as summarized above), the ALJ made the following determination as to Plaintiff's RFC:

> [T]he claimant had the [RFC] to perform light work as defined in 20 CFR 404.1567(b) except the claimant could lift, carry, push, and pull up to 20 pounds occasionally and 10 pounds frequently; could stand/walk for six hours total in an eight-hour workday with normal breaks; could sit for six hours total in an eight-hour workday with normal breaks; could frequently but not continuously handle and finger with the left nondominant upper extremity; could perform no overhead reaching; needed to avoid exposure to cold; and needed to avoid

concentrated exposure to respiratory irritants such as dust, fumes, gases, and so forth.

(Tr. 20.) The ALJ's RFC determination does not reflect any consideration of the mental impairments identified in step two of the evaluation. (Tr. 20–23.)[4]

## III. ANALYSIS

Plaintiff contends that ALJ Farrell's July 17, 2015 determination was based on four errors that require reversal: (1) ALJ Farrell's exclusion of medical evidence based on the DA's fraud investigation was overly broad (Pl.'s Br. 8–10); (2) ALJ Farrell erred in step four of his disability evaluation by failing to consider her non-severe mental impairments, which he had acknowledged in step two of his analysis, when determining Plaintiff's RFC (Pl.'s Br. 10–11); (3) ALJ Farrell erred in step two of his disability analysis by failing to recognize that Plaintiff suffered from a severe mental impairment (Pl.'s Br. 11–16); and (4) ALJ Farrell did not discharge his duty "to investigate and develop the arguments both for and against granting benefits" because, after deciding to exclude essentially all of Plaintiff's mental health records, he did not obtain the assistance of impartial, objective medical experts to examine or provide testimony concerning Plaintiff's mental health. (Pl.'s Br. 16–17.)

As explained below, the Court finds that Plaintiff's second and fourth contentions provide sufficient grounds on which to grant her motion and remand this action. Accordingly, with the exception of a few observations made at the end of this opinion, the Court need not address Plaintiff's first and third contentions.

---

[4] The ALJ launched his RFC analysis by stating "[a]side from [Plaintiff's] mental complaints, addressed [in the prior analysis of whether Plaintiff met a Listing], [Plaintiff] has alleged [various physical ailments]. . . . " (Tr. 20.) He then proceeded to discuss only the physical ailments.

10

### A. The ALJ's Determination of Plaintiff's RFC

In determining Plaintiff's RFC, the ALJ failed to consider Plaintiff's non-severe mental impairments. Aside from a boilerplate statement that he "careful[ly] considered the entire record," there is no evidence that the ALJ took Plaintiff's non-severe mental impairments into account when determining her RFC. This was in error.[5] In determining a claimant's RFC, the ALJ was required to consider all medically determinable impairments, even those that are not "severe." 20 C.F.R. § 416.954(a). Furthermore, there is evidence that the ALJ's ultimate determination, under step five of the evaluation, may have come out differently if Plaintiff's mental impairments had been considered in determining her RFC. (Pl.'s Br. 18; Def.'s Br. 16; Tr. 94.) On remand, the SSA must re-evaluate Plaintiff's RFC, taking into account the non-severe mental impairments that ALJ Farrell recognized in step two of his evaluation.

### B. The ALJ's Decision Not to Supplement the Record

Having excluded the vast majority of Plaintiff's medical evidence, ALJ Farrell was faced with a drastically limited and marginally relevant record of Plaintiff's medical history for the relevant time period, consisting solely of a "mental impairment questionnaire" form, dated March 23, 2015, prepared on Plaintiff's behalf by her treating psychiatrist, Dr. Alicia Hurtado, and a letter

---

[5] Defendant cites *Stanton v. Astrue*, 370 F. App'x 231, 233 n.1 (2d Cir. 2010) (summary order) as standing for the proposition that "the fact that the ALJ states that he considered 'the combination of impairments' and the combined effect of 'all symptoms,' in making his determination, sufficiently demonstrates that the ALJ considered the combined effect of all of the individual's impairments." (Def.'s Br. at 32–33.) The Court finds that the cited dictum in the *Stanton* footnote stands for no such proposition. The footnote simply states that "contrary to [the plaintiff's] argument, the ALJ's decision makes clear that he considered the 'combination of impairments' and the combined effect of 'all symptoms' in making his determination." *Stanton*, 370 F. App'x at 233 n.1. This vague statement is open to a number of interpretations, and by no means indicates that the ALJ in *Stanton* made no reference to certain impairments beyond a boilerplate statement that he had considered "all" of them. The Court declines to assume that the Second Circuit, in dictum in a non-precedential summary order, intended to grant ALJs free rein to discharge their statutory duty to consider the combined effect of all impairments with a boilerplate phrase.

from Dr. Hurtado, dated June 12, 2015, in which Dr. Hurtado opined on Plaintiff's mental functioning. (*See supra*; *see also* Tr. 15–19.) Further, ALJ Romeo afforded "little weight" to those documents because they were prepared "almost two years after the prior allowance date" and were "based on the claimant's own subjective reports of mental impairment." (Tr. 17–18.)

During the hearing, the independent medical examiner, Dr. Kenneth Cloninger, a licensed neurologist, began to opine on Plaintiff's mental health. (Tr. 53–62.) ALJ Farrell interrupted the examiner's testimony, and instructed the examiner to limit his testimony to Plaintiff's physical health. (Tr. 56.) The ALJ did not explicitly explain why he limited Dr. Cloninger's testimony in this manner.[6]

In lieu of a medical expert, ALJ Farrell appears to have evaluated for himself the "persuasiveness" of Plaintiff's explanation as to why her symptoms of PTSD remained dormant in the ten years after the triggering incident, *i.e.*, the terrorist attacks in New York City on September 11, 2001. According to ALJ Farrell, Plaintiff's claim that her PTSD caused severe limitations in the 2009 to 2013 timeframe was "not persuasive" because Plaintiff had not manifested significant symptoms of PTSD in the eight years after the triggering incident. (Tr. 18.)

The ALJ's duty to investigate includes a duty to obtain medical expertise on matters that require medical expertise. Evaluation of a person's PTSD symptoms—including an evaluation of the plausibility that those symptoms would remain dormant for a period of years—requires medical expertise that the ALJ did not obtain at the redetermination hearing. Although the Commissioner argues that the SSA specifically invited Plaintiff to supplement the record before the

---

[6] In the absence of any explanation, the Court assumes that the ALJ precluded Dr. Cloninger from testifying about Plaintiff's mental impairments because that testimony would have been based on Plaintiff's statements to the doctor, which the ALJ had excluded based on his interpretation of Sections 205(u) and 1631(e)(7) of the Act, which included, *inter alia*, excluding any "[m]edical evidence [from other sources] based in whole or in part on [Plaintiff's] subjective complaints of a mental impairment alleged in [Plaintiff's] application for disability benefits." (Tr. 12–13.)

12

redetermination hearing—thus relieving the ALJ of any obligation to fill in gaps or obtain additional evidence regarding Plaintiff's mental health impairments—that invitation was, indeed, a hollow one, in light of the ALJ's intent to disregard any "[m]edical evidence [from other sources] *based in whole or in part on [Plaintiff's] subjective complaints of a mental impairment alleged in [Plaintiff's] application for disability benefits*." (Tr. 12–13.) Any attempt by Plaintiff to submit new mental health evaluations, therefore, would have been doomed from the start. In any event, that Plaintiff was given the opportunity to submit additional evidence does not relieve the ALJ of his affirmative obligation to develop the administrative record, *Lamay*, 562 F.3d at 508–09, including obtaining any necessary medical expertise.[7]

Defendant argues that the ALJ was not required to call a psychological expert in this context because (1) Section 205(u)(1)(A) made no mention of a duty to redevelop the record upon redetermination; (2) SSR 16-1p does not mandate further record develop in such a situation; and (3) HALLEX 1-1-3-25.C.4.b specifically instructs that during redeterminations based on fraud or similar fault, SSA will not generally develop evidence. (Def. Br. 34.)

With regard to the first two arguments, the Court notes that the absence of a stated requirement in Section 205(u)(1)(A) or SSR 16-1p that the ALJ develop the record after evidence has been disregarded does not mean that an ALJ never has such a duty. In contrast, in light of the ALJ's general statutory duty to affirmatively develop the record, the Court presumes that this duty continues to apply after certain evidence has been disregarded as tainted by fraud, in the absence

---

[7] Indeed, the Court observes that given the frequency and regularity with which the SSA retains independent medical experts to evaluate DIB claims and testify at ALJ hearings, as happened here, it is hard for the Court to understand why the SSA failed to do so here when, by virtue of *its* interpretation of Sections 205(u) and 1631(e)(7) of the Act, it excluded virtually all of Plaintiff's medical evidence regarding her mental impairments.

13

of a provision explicitly disposing of this duty. SSR 16-1P explicitly states that it "does not replace or limit other appropriate standards and criteria for evaluation of claims."

As to HALLEX I-1-3-25.C.4.b, the Court does not find that it eliminates the ALJ's duty to affirmatively develop the record where necessary. It states that "[d]uring redeterminations based on fraud or similar fault, SSA will not generally develop evidence." *Id.* However, it goes on to state: "[h]owever, development may be appropriate in circumstances such as the following: [where] [m]edical or vocational expert evidence is needed" [or where] [t]he adjudicator finds it necessary to develop new sources of evidence for the period at issue." *Id.* As discussed, this clearly was a situation where "[m]edical or vocational expert evidence [was] needed." Thus HALLEX I-1-3-25 does not reduce the ALJ's obligation in a situation such as this one.

In sum, the ALJ should have obtained a medical expert to evaluate Plaintiff's mental health, including the "persuasiveness" of her explanation of how her PTSD symptoms were dormant between 2001 and 2009. On remand, the ALJ should create an adequate record before making his determination.

**C. Other Issues**

Having found two flaws in the ALJ's determination that require remand and redetermination, the Court need not address Plaintiff's other contentions at this time. Given the significance of the issues, however, the Court makes the following observations.

With respect to Plaintiff's assertion that ALJ Farrell erred in step two of his evaluation by failing to recognize that Plaintiff suffered from a severe mental impairment (Pl.'s Br. 10–11), the Court notes that Plaintiff's argument on this front relies primarily on evidence that ALJ Farrell excluded from the record. (Pl.'s Br. 10–11.)

With respect to Plaintiff's assertion that ALJ Farrell's exclusion of medical evidence was overbroad (Pl.'s Br. 8–10), the Court makes the following observations. First, the provisions of

that Act that address DIB redeterminations based on the SSA's receipt of information suggesting an initial determination was tainted by fraud "or similar fault," 42 U.S.C. § 405(u)—which, the parties agree, govern the SSA's exclusion of evidence in Plaintiff's case—define "similar fault" as conduct involving "an incorrect or incomplete statement that is material to the determination [that is] *knowingly* made," or conduct involving "information that is material to the determination [that is] *knowingly* concealed." 42 U.S.C. § 405(u)(2) (emphases added). Yet, as Plaintiff rightly argues, the SSA does not address this "knowledge" or *mens rea* element anywhere in its submissions. (Pl.'s Br. 9–10.) Indeed, rather than address what appears to be a *mens rea* requirement of 42 U.S.C. § 405(u)(2), the SSA points to an internal manual of procedure, "Hearings, Appeals, and Litigation Law Manual (HALLEX)," and emphasizes that a "preponderance of evidence" standard does not apply to its determination that there is "reason to believe" that an applicant's evidence was tainted by fraud or similar fault. While the SSA is generally entitled to deference in interpreting its authorizing statute and regulations, *see United States v. Mead*, 533 U.S. 218, 227–28 (2001), it may not ignore the plain meaning of the Act, which defines "similar fault" as certain conduct that is done "knowingly." 42 U.S.C. § 405(u).

Second, the Court is troubled by the effect that the SSA's redetermination and evidence-exclusion procedures have in the specific circumstances of Plaintiff's case. Taking a step back, the Court observes that Plaintiff's DIB have essentially been denied based on a letter by the DA's office informing the SSA that the DA's office investigated and decided to prosecute Plaintiff's former attorney and former psychiatrist. (Tr. 229–30.) Based on that letter, the SSA determined that Plaintiff was no longer eligible for disability benefits, and, in her redetermination hearing before ALJ Farrell, Plaintiff was effectively precluded from giving any evidence whatsoever of her mental health during the relevant period. Indeed, based merely on a suspicion and guilt by

association, without any fact-finding in the record as to Plaintiff's culpability in the fraud scheme, the SSA disregarded not only Plaintiff's records from the health providers in question, but also all of Plaintiff's allegations regarding a mental impairment diagnosed by a discredited doctor; as well as all medical evidence from other sources that was based in whole or in part on Plaintiff's allegations of a mental impairment alleged in her original application for disability benefits. In other words, the SSA withdrew Plaintiff's benefits, disregarded her existing medical records, and told Plaintiff that she was barred from even giving *testimony* as to her mental health condition in the relevant time period and, in effect, from obtaining any medical evidence regarding her mental health—all of this without determining whether Plaintiff knew of, or knowingly participated in, the fraud scheme. The Court questions whether this procedure for adjudicating Plaintiff's entitlement to DIB satisfies the requirements of Due Process guaranteed by the U.S. Constitution. *See Basciano v. Herkimer*, 605 F.2d 605, 609 (2d Cir. 1978); *Mathews v. Eldridge*, 424 U.S. 319 (1976). However, given the alternative grounds on which to remand this action, the Court abstains from this constitutional issue at this time.

## CONCLUSION

For the reasons set forth above, the Court DENIES the Commissioner's motion for judgment on the pleadings and GRANTS Plaintiff's cross-motion. The Commissioner's decision is remanded for further consideration and new findings consistent with this Memorandum & Order.

The Clerk of Court is respectfully requested to close this case.

SO ORDERED.

*/s/ Pamela K. Chen*
Pamela K. Chen
United States District Judge

Dated: March 31, 2016
      Brooklyn, New York

16